Robert S. WILSON,
Petitioner, Appellant,

v.

John BROWN, Warden A.C.I., et al.,
Respondent, Appellee.

No. 88–1329.

United States Court of Appeals,
First Circuit.

Heard Sept. 8, 1989.

Decided Nov. 21, 1989.

Lois M. Lewis, West Newton, Mass., was on brief for petitioner, appellant.

Stephen M. Robinson, Asst. Legal Counsel, Legal Services, Rhode Island Dept. of Corrections, Providence, R.I., was on brief, for respondent, appellee.

Before TORRUELLA, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIBSON,* Senior Circuit Judge.

---

* Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. Because of this disposition, we need not address appellee's contentions that: (1) appellant's appeal is untimely, and (2) that appellant's failure to notify the Massachusetts Department of

TORRUELLA, Circuit Judge.

Appellant brought a 42 U.S.C. § 1983 action alleging damages for violation of his civil rights, and moved for summary judgment. He now appeals the decision of the United States District Court for the District of Rhode Island denying his motion, and granting summary judgment in favor of the appellee, John Brown, Warden of the Rhode Island Adult Correctional Institution. Because we find that the appellant does not state a claim for monetary damages under § 1983 pursuant to *Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and fails to make a cognizable claim for prospective injunctive relief, we affirm the decision of the district court.[1]

During 1976 and 1977, appellant, Robert S. Wilson, was convicted in New Hampshire on three counts of robbery. In 1977, he was convicted in Massachusetts of a variety of crimes, including three counts of first-degree murder. Following his Massachusetts convictions, Wilson was transferred from a New Hampshire to Massachusetts prison, pursuant to the New England Interstate Corrections Compact (Compact). Mass.Gen.Laws ch. 125, App. § 1–2. Approximately three years later, on September 22, 1980, Wilson was again transferred in accord with the Compact to the Rhode Island Adult Correctional Institution (ACI).

Wilson remained in ACI's general prison population at maximum security status for about five months. Then, on January 28, 1981, a new high security facility (Supermax) opened, and prison administrators began a review of all inmate records to determine which offenders should be incarcerated in the new institution. Following a hearing on February 17, 1981, at which Wilson was both present and assisted by a prison counselor, the prison's Classification Board recommended that Wilson be transferred to Supermax, but that he retain his security classification. This transfer sub-

Corrections should result in a lack of jurisdiction over both Massachusetts' alleged failure to comply with the New England Interstate Corrections Compact, and the alleged denial of due process pursuant to the transfer of custody.

jected him to closer supervision, but his privileges otherwise remained the same. The Board classified Wilson as a high security risk because of the length of his sentence and the nature of his crimes.

Wilson remained in Supermax for two years, during which time his classification status was reviewed and reaffirmed every six months at regularly scheduled hearings. On January 10, 1983, Wilson was reconveyed to Massachusetts, where he currently remains incarcerated.

On January 23, 1981, Wilson filed a habeas corpus petition alleging that his incarceration in Rhode Island was unconstitutional because his transfer from Massachusetts to Rhode Island was not authorized under the New England Interstate Corrections Compact. Wilson also argued that the unauthorized transfer violated his due process rights. A supplemental complaint challenged his placement in Supermax. The Massachusetts Attorney General and the Massachusetts Department of Corrections moved to join as party respondents on February 26, 1981, although they were not initially joined by appellant.

On August 25, 1981, the district court entered an order dismissing, without prejudice, Wilson's habeas corpus claim because he failed to exhaust available state remedies. The court also dismissed the claim that Wilson's transfer to Rhode Island from Massachusetts violated his due process rights, but retained appellant's supplemental complaint concerning the intrastate reclassification, finding that it was cognizable under 42 U.S.C. § 1983. Although Wilson filed a notice of appeal from this order, the district court refused to certify that there was probable cause to appeal. This Court affirmed that refusal.

After a period of more than four years, Wilson wrote to the district court requesting permission to litigate his § 1983 claim.

The court referred the reclassification issue to a magistrate, who, after reviewing the pleadings, recommended that summary judgment be entered for the appellees. This recommendation was adopted by the district court in an order entered September 17, 1987.

We will not extend our inquiry to the merits of this case, finding, as we do, that under *Will v. Michigan Dep't of State Police*, 485 U.S. 1005, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1989), we are without jurisdiction to entertain the appeal, which petitions only for monetary damages and not for injunctive relief.

In framing his § 1983 action,[2] Wilson sued John Brown in his official capacity as Warden of the Rhode Island Adult Correctional Institution, seeking damages for violation of his civil rights. Appellant essentially claims that his transfer from Massachusetts to Rhode Island prison, and his intra-prison transfer to Supermax, constituted an improper downgrading of his status, and deprived him of his constitutional right to due process. As a result of these alleged civil rights violations, appellant alleged damages consisting of: mental and physical anguish due to his placement in segregation; the denial of an opportunity to work at the institutional jobs offered; the denial of an opportunity to aid in supporting his family; his divorce from his wife; the psychological assistance his son required as a result of the transfer; his inability to see his relatives; and, the denial of the right to correspond with his co-defendant and appeal his conviction.

In our opinion, each of these allegations is essentially asking for an award of monetary damages: in view of the fact that appellant is currently incarcerated in Massachusetts, injunctive relief is not an appropriate remedy for any of these alleged injustices.[3]

---

2. That section provides, in pertinent part, that:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Con-

stitution and laws, shall be liable to the party injured....
42 U.S.C. § 1983.

3. Although a request for injunctive relief in the form of expungment of appellant's record with regard to his incarceration at Supermax was made during oral argument before this Court by

In *Will*, the Supreme Court held that neither states, nor state officials acting in their official capacities, are "persons" within the meaning of § 1983. Consequently, a cause of action for damages against these parties will not lie. In so finding, the Court limited its holding to states or to government entities considered arms of states for Eleventh Amendment purposes. *Will*, 109 S.Ct. at 2311 (referring to *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977)). Since a penal system is an essential appendage of the state corpus, *e.g., Maldonado Santiago v. Velázquez Garcia*, 821 F.2d 822 (1st Cir.1987), the warden of a state prison is a state official for the purposes of a § 1983 action. *Id.* at 829–30. As the Supreme Court observed:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985).

*Will*, 109 S.Ct. at 2311. Since Wilson clearly sued John Brown in his official capacity of Warden of ACI, asking for monetary damages rather than for injunctive relief,[4] appellant has no cognizable claim under § 1983, and the instant appeal must be dismissed.

Since we hold that we lack jurisdiction to hear the appeal, we need not extensively analyze the more intricate issue about whether there is a live controversy. Ordinarily, an actual controversy must exist at all stages of litigation to sustain federal court jurisdiction. *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). One exception to this requirement of nonmootness is if the case is "capable of repetition yet evading review." *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1972). Under this exception, a case can be heard, despite the absence of a live controversy, if "there [is] a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). *See also Raso v. Moran*, 551 F.Supp. 294, 297 (D.R.I.1982).

The instant case is contradistinct. Since Wilson is no longer incarcerated in Rhode Island, it is mere speculation rather than "demonstrated probability" to say that he would again be returned to Rhode Island. Consequently, it may be that Wilson did not raise the issue of prospective injunctive relief because it may be moot. Of course, the same cannot be said of the habeas corpus petition because "a habeas petition does not automatically become moot if custody abates after the case is brought and while it is still pending...." *Lefkowitz v. Fair*, 816 F.2d 17, 19 (1st Cir.1987). *See also Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968). However, appellant does not appear to make arguments based on his habeas corpus petition on appeal, and in-

---

appellant's counsel, this argument was made for the first time on appeal. It is consequently beyond our cognizance. *Hurney v. Carver*, 602 F.2d 993 (1st Cir.1979). The fact that Wilson was a *pro se* plaintiff throughout most of the litigation, does not make us more inclined to interpret damage pleas further than their plain language permits. While this Court will read a *pro se* complaint more leniently than one drafted by an attorney, we decline to fabricate "unpleaded facts to support ... conclusory [allegations]." *Slotnick v. Striviskey*, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978).

**4.** Although it is, of course, consistent with the Eleventh Amendment for a federal court to enjoin state officials to conform future conduct to the strictures of federal law, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), appellant makes no timely claim for any type of injunctive relief. Moreover, even if a suit against Warden Brown could have been entertained, it is well settled that while prospective injunctive relief is permissible, retrospective relief is barred. *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974).

stead focuses on the § 1983 damages action.

We see no reason to continue. Because injunctive relief was not timely sought, and a damage action cannot be sustained under § 1983, we affirm the district court's order granting summary judgment for appellees.

*Affirmed.*