USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1337 PATRICK J. DOYLE AND H.P. LEASING, INC., Plaintiffs - Appellants, v. HASBRO, INC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _____________________ Jeffrey S. Entin and Sahady, Entin & Entin, P.C. on brief _________________ _____________________________ for appellants. John A. Tarantino, Patricia K. Rocha and Adler Pollock & __________________ __________________ ________________ Sheehan Incorporated on brief for appellees Hasbro, Inc. and Alan ____________________ Hassenfeld. J. Richard Ratcliffe and Temkin & Associates Ltd. on ____________________ ________________________ brief for appellees Israel and Miriam Laudon. William A. ___________ Jacobson and Kaplan and Jacobson, Inc. on brief for appellee ________ ___________________________ David Thibodeau. ____________________ December 23, 1996 ____________________ TORRUELLA, Chief Judge. Plaintiffs-appellants, H.P. TORRUELLA, Chief Judge. ____________ Leasing, Inc., and Patrick J. Doyle ("Doyle"), H.P. Leasing's sole stockholder and President, brought this civil action against Hasbro, Inc.; Alan Hassenfeld ("Hassenfeld"), Hasbro's President, Chairman of the Board of Directors, and Chief Executive Officer; Israel Laudon ("Laudon"), Vice President of Hasbro's Traffic Department; Miriam Laudon, Laudon's wife; David Thibodeau, Laudon's assistant; Hugh Maxwell, an Executive Vice President at Hasbro; and Michael Oliva d/b/a Transport Services ("Oliva"). Plaintiffs claimed violation of the federal racketeering laws, 18 U.S.C. 1962(c) & (d) ("RICO"), as well as the following violations of Massachusetts state law: breach of contract against all defendants (Count I); civil conversion and civil larceny against Laudon, Oliva and Thibodeau (Count II); intentional and malicious interference with an advantageous business relationship against Laudon, Oliva, and Thibodeau (Count III); intentional infliction of emotional distress against Laudon, Oliva, and Thibodeau (Count IV); fraud, deceit and misrepresentation against Laudon, Thibodeau, Hassenfeld, and Hasbro (Count V); and negligent entrustment or negligent supervision against Hasbro (Count VI). The district court dismissed the RICO claim and Counts I through VI as to defendants Hassenfeld, Oliva, and Thibodeau. Doyle v. Hasbro, 884 F. Supp. 35, 42 (D. Mass. 1995). In an _____ ______ order dated May 4, 1995, the claims against Israel and Miriam Laudon were also dismissed. The RICO claim against Hasbro was -2- dismissed from the bench on March 27, 1995, see id. at 38-39, and ___ ___ Counts I, V, and VI were also dismissed as to Hasbro.1 This appeal followed.2 I. BACKGROUND I. BACKGROUND Plaintiffs' amended complaint alleges the following facts. In August and September 1980, plaintiffs met with Laudon, who agreed, on Hasbro's behalf, to retain the plaintiffs' services for hauling and delivering freight. In October 1980, Laudon required that Doyle pay to Oliva a "commission" of ten percent of the traffic charges billed by H.P. Leasing. Doyle acceded to Laudon's request, viewing the payments as a business expense that would ensure a consistent volume of business. Doyle was instructed by Laudon that receipt of the commissions was necessary for the continuance of the contracts. Early in the relationship, Laudon informed plaintiffs that business would increase and that additional tractor-trailers would be required. In reliance on these representations, plaintiffs purchased 28 tractors. The increase in business that materialized, however, did not merit such expansion.  ____________________ 1 Doyle v. Hasbro, 884 F. Supp. 35, 42-43 (D. Mass. 1995), _____ ______ dismissed Count V as to Hasbro only "to the extent liability is premised on the conduct of Hassenfeld, Oliva, and Thibodeau," and stated that the count may "proceed to the extent premised on the conduct of the remaining defendants." Id. at 42-43. In its ___ order of May 4, 1995, however, the district court dismissed Count V against Israel and Miriam Laudon, the remaining defendants, implying that the claim against Hasbro must also be dismissed. 2 Plaintiffs-appellants have appealed only a subset of the claims that were dismissed. -3- As time went on, Oliva and Laudon reduced the volume of business sent to H.P. Leasing. Between 1982 and 1985, H.P. Leasing paid Laudon and Oliva commissions averaging $440,000 per year, but from 1990 to 1992, these payments averaged only $45,000. Over the twelve years from 1980 to 1992, Laudon also forced Doyle to pay for yearly Christmas parties for Hasbro employees, to give gift certificates to Hasbro employees, to pay for personal vacations for Laudon and his wife, and to pledge $30,000 to the Holocaust Memorial. Doyle and his wife were personally contacted, harassed and threatened during the period. For example, Thibodeau, Laudon, and their wives would demand to be taken out to dinner. These demands were accompanied by comments such as "I own you" and "I can put you out of business and you won't have a house to live in." Laudon, Thibodeau and Hassenfeld worked closely together and were aware of each other's conduct. In 1992, Laudon informed plaintiffs that H.P. Leasing ought to file for bankruptcy under Chapter 11 of the Bankruptcy Code. He promised that Hasbro would support H.P. Leasing with a minimum of $50,000 a week in revenue. Doyle felt he had no choice, and, on March 12, 1992, H.P. Leasing filed for bankruptcy. Defendants did not provide the support promised by Laudon. In June 1992, Doyle stopped making commission payments to Laudon. Doyle perceived Hasbro's failure to award contracts -4- to plaintiffs as a breach of the prior representations made to him. In November 1992, Doyle met with Hassenfeld, who directed that plaintiffs receive twenty to thirty thousand dollars per week in business. In January 1993, plaintiffs received $28,000 in business from Hasbro. On January 27, 1993, H.P. Leasing was closed for business. II. STANDARD OF REVIEW II. STANDARD OF REVIEW We review the motion to dismiss de novo. Aulson v. _______ ______ Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). We accept as true "all _________ well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Id. Dismissal under ___ Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. Id. The ___ pleading requirement, however, is "not entirely a toothless tiger." The Dartmouth Review v. Dartmouth College, 889 F.2d 13, ____________________ _________________ 16 (1st Cir. 1989). "The threshold [for stating a claim] may be low, but it is real." Gooley v. Mobile Oil Corp., 851 F.2d 513, ______ ________________ 514 (1st Cir. 1988). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Id. at 515. Although all inferences must be made in ___ the plaintiffs' favor, this court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3. ______ In conducting our review of the case, we are limited to those allegations contained in the amended complaint. This is -5- true both as to facts, see Litton Indus., Inc. v. Col n, 587 F.2d ___ ___________________ _____ 70, 74 (1st Cir. 1978) ("[O]ur focus is limited to the allegations of the complaint. The question is whether a liberal reading of [the complaint] can reasonably admit of a claim." (internal quotations omitted)), and as to arguments, see McCoy v. ___ _____ Massachusetts Inst. of Technology, 950 F.2d 13, 22 (1st Cir. __________________________________ 1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal."). We, therefore, do not consider factual allegations, arguments, and claims that were not included in the amended complaint. III. THE RICO CLAIMS (COUNT VII) III. THE RICO CLAIMS (COUNT VII) We begin by considering plaintiffs-appellants' claims under 18 U.S.C. 1962(c) and (d). Section 1962(c) reads: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. 1962(c). Section 1962(d) states that "[i]t shall be unlawful for any person to violate any of the provisions of subsections (a), (b), or (c) of this section." Id. 1962(d). ___ For the section 1962(c) claim to survive a motion to dismiss, the amended complaint must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 _________________ _________ -6- (1985); see also Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 ________ _______________ _______________________ F.2d 5, 5-6 (1st Cir. 1990). "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, 423 U.S. at 496. ______ This court has held that under section 1962(c), "the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." Arzuaga-Collazo, 913 F.2d _______________ at 6; see also Odishelidze v. Aetna Life & Casualty Co., 853 F.2d ________ ___________ _________________________ 21, 23 (1st Cir. 1988) (per curiam); Schofield v. First Commodity _________ _______________ Corp. of Boston, 793 F.2d 28, 29-30 (1st Cir. 1986) (collecting _______________ cases). In order to succeed, therefore, the complaint must allege the existence of a "person" distinct from the "enterprise." We must, therefore, determine if the amended complaint is sufficient to identify a "person" and an "enterprise." The amended complaint is reasonably clear with respect to the "person" requirement, stating that "all of said defendants are ___ 'persons' within the meaning of this Act." Amended Complaint  62 (emphasis added). The only reasonable interpretation of this statement includes all defendants: Hasbro, Hassenfeld, Israel Laudon, Miriam Laudon, Hugh Maxwell, Thibodeau, and Oliva. Later in the same paragraph, the complaint once again alleges that "all ___ defendants can be shown to be persons within the meaning of this Act." Id. (emphasis added). In paragraph 64, where appellants ___ allege the section 1962(d) violation, the amended complaint -7- states that "plaintiff is entitled to relief against all ___ defendants," (emphasis added) once again suggesting that each defendant is, individually, identified as a "person" under the Act. The amended complaint fails to distinguish any subset of the defendants in its section 1962(c) claim. Indeed, plaintiffs-appellants do not mention any defendant by name in paragraphs 61-63, in which the violation of section 1962(c) is alleged. Thus, although appellants' brief would have us believe that only Hasbro is a "person" for RICO purposes, the amended complaint does not, even under a generous reading, support this claim. Although the amended complaint alleges the existence of an enterprise, id. at 62, it never squarely identifies one. It ___ may be that a sympathetic reader could infer from the complaint that Hasbro was the alleged RICO enterprise; this reading might take support, for example, from the complaint's allegation that "[d]efendant, Hasbro, Inc., is civilly liable under [ 1962(d)] for an agreement of its officers to conduct the affairs of the corporation in a manner which violates Section 1962(c) of the RICO Act." Id. at 64. However, the possibility that the ___ plaintiffs considered Hasbro the "enterprise" is undermined by the complaint's repeated contention that Hasbro is a RICO "person." A RICO person cannot also serve as the RICO enterprise that the person is allegedly conducting in violation of section -8- 1962(c). See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44-45 (1st ___ _______ _______________ Cir. 1991); Arzuaga-Collazo, 913 F.2d at 6. _______________ More importantly, the plaintiffs do not argue on appeal that Hasbro is the enterprise. Instead, they contend that their own company, H.P. Leasing, is the enterprise. We decline to rewrite the complaint language in order to find that plaintiffs sufficiently identified Hasbro as a RICO enterprise when plaintiffs do not even suggest as much on appeal. Rather, holding plaintiffs to their present position, we look to the complaint to see whether it can fairly be taken to bear the meaning that plaintiffs now ascribe to it. Unfortunately, no reasonable reading of the amended complaint supports plaintiffs' current position that H.P. Leasing is the enterprise. The complaint's only mention of H.P. Leasing in connection with the RICO count appears to distinguish plaintiff H.P. Leasing from the enterprise controlled by defendants that allegedly caused H.P. Leasing injury. Amended Complaint 63 ("The facts provided . . . above, allege a nexus between the control of said enterprise, the racketeering activity, and ultimately the injury to plaintiffs H.P. Leasing and Pat Doyle."). We add that there is no indication that plaintiffs' present position was ever advanced in the district court. Cf. McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, ___ _____ _____________________________ 22-23 (1st Cir. 1991), cert. denied, 504 U.S. 910 (1992). ____________ The complaint's failure to identify any enterprise, distinct from a named person defendant, is fatal under RICO. But -9- we think it worth adding, although we do not formally decide the point, that the claim appears remarkably weak in a quite different respect. To prevail under section 1962(c), a complaint must "establish a causal relationship between the racketeering predicates and [the] asserted injury." Miranda, 948 F.2d at 46- _______ 47. Here, if there had been no bribes, we have no reason to think that plaintiffs would have gotten any Hasbro business at all. We conclude, therefore, that plaintiffs-appellants fail to meet the bare requirements of a RICO claim under sections 1962(c) and (d). Because we find that the RICO count must be dismissed for failure to state a claim, we need not address the other issues raised in plaintiffs-appellants' brief regarding the RICO claim.3 For the foregoing reasons, the dismissal of the RICO claim is affirmed. ________ IV. THE STATE LAW CLAIMS IV. THE STATE LAW CLAIMS A. Negligence (Count VI) A. Negligence (Count VI) _____________________ Count VI alleges "negligent entrustment or negligent supervision" by Hasbro. We will deal with the two claims separately. The tort of negligent entrustment is normally used in cases in which a defendant has entrusted a motor vehicle to an incompetent driver, resulting in injury. See, e.g., Mitchell v. ___ ____ ________  ____________________ 3 For example, the question of whether Schofield v. First _________ _____ Commodity Corp. of Boston, 793 F.2d 28 (1st Cir. 1986) (limiting __________________________ the circumstances under which corporate liability can attach in a RICO action), applies to the facts of this case need not be decided.  -10- Hastings & Koch Enters., Inc., 647 N.E.2d 78, 82-84 (Mass. App. ______________________________ Ct. 1995); Kunkel v. Alger, 406 N.E.2d 402, 407 (Mass. App. Ct. ______ _____ 1980). The tort has also been applied to suppliers. A "supplier may be liable for harm caused after the supplier has knowingly placed property in the hands of an incompetent person." Kyte v. ____ Philip Morris, Inc., 556 N.E.2d 1025, 1029 (Mass. 1990). ___________________ Plaintiffs-appellants would have us apply the doctrine to the instant case. They have not offered, and our own research has failed to uncover, any cases from Massachusetts or elsewhere in this circuit, applying the doctrine to facts that resemble those at bar.4 The question for this court, therefore, is whether we should expand the present reach of the tort of negligent entrustment, as used in Massachusetts, to include this case. To do so would require a novel use of the doctrine which we decline to adopt. The relationship between a firm and its employees is very different from the relationships usually at issue in negligent entrustment cases. The latter normally involve a parent or other adult entrusting a minor or incompetent person with a motor vehicle or some other instrumentality. "An action for negligent entrustment involves a person's duty to keep a dangerous instrumentality out of a child's reach." Id. at 1036. ___ While it may be possible to point to similarities between the  ____________________ 4 Plaintiffs-appellants muster only a single district court case in support of their claim, Bernstein v. IDT Corp., 582 F. Supp. _________ _________ 1079 (D. Del. 1984). Although that case has certain similarities to the case at bar, we are not bound by its holding. -11- current application of the doctrine and the one advocated by plaintiffs-appellants, we believe that the differences are much more striking. Furthermore, plaintiffs-appellants offer no convincing argument showing why the application of the doctrine in this context would be desirable. Indeed, their brief offers no reasons whatsoever why this court should extend the doctrine. Because the question before us is one of state law, we must exercise considerable caution when considering the adoption of a new application. "[A]s a federal court hearing this state law issue under our supplemental jurisdiction, we are reluctant to extend [state] law beyond its well-marked boundaries." Andrade _______ v. Jamestown Housing Auth., 82 F.3d 1179, 1186-87 (1st Cir. 1996) _______________________ (citations omitted). Without a powerful argument for the extension of the doctrine, we are, therefore, unwilling to apply the doctrine of negligent entrustment in a novel fashion. For the above reasons, we affirm the dismissal of ______ plaintiffs-appellants' negligent entrustment claim. We now turn to the negligent supervision claim. The district court found that plaintiffs-appellants failed to provide any case law suggesting that the doctrine of negligent supervision reaches the instant case. Doyle, 884 F. Supp. at 42. _____ We need not decide that issue here, however, because the claim fails on other grounds. The plaintiffs-appellants' theory on appeal is that "had plaintiffs been dealing with competent, responsible and honest Hasbro employees, H.P. Leasing would have -12- simply shipped goods, made a profit, and there would be no issues to litigate." Appellants' Brief at 36. This theory, however, is contradicted by the amended complaint, which alleges that the commissions, or kickbacks, were paid within a month or two of the start of the relationship between the parties and that plaintiff believed the payments "would insure a consistent volume of business." Plaintiffs would be entitled to damages only if they alleged that they would have received Hasbro's business in the absence of kickbacks. If H.P. Leasing was awarded the business only because it agreed to the kickback scheme, and, therefore, earned profits that it would not have earned without the scheme, it cannot claim damages when the scheme comes to an end. Plaintiffs, however, make no claims to the effect that proper supervision by Hasbro would have left plaintiffs-appellants in a better position. There is no evidence that H.P. Leasing would have received any business from Hasbro in the absence of the kickback scheme. It is not sufficient for the purposes of stating a claim for damages that the benefits derived from the illegal kickbacks have disappeared. Because no damages are alleged, plaintiffs-appellants have failed to state a claim for negligent supervision. For the foregoing reasons, we affirm the dismissal of ______ Count VI. B. Fraud, Deceit, and Misrepresentation (Count V) B. Fraud, Deceit, and Misrepresentation (Count V) ______________________________________________ Count V of the complaint alleges that the conduct of defendants Laudon, Thibodeau, Hassenfeld and Hasbro constituted -13- "fraud, deceit and misrepresentations." Amended Complaint at  54. In order to state a claim for fraudulent misrepresentation, the plaintiff must allege: (1) that the statement was knowingly false; (2) that [defendants] made the false statement with the intent to deceive; (3) that the statement was material to the plaintiffs' decision . . .; (4) that the plaintiffs reasonably relied on the statement; and (5) that the plaintiffs were injured as a result of their reliance. Turner v. Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 1986); see ______ _________________ ___ also Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (Mass. ____ _____ __________________ 1982). With respect to Hassenfeld, plaintiffs allege that in November 1992, he "directed that plaintiffs receive $20,000.00 to $30,000.00 per week in business from the defendant, Hasbro, Inc." Amended Complaint 37. Hassenfeld also promised that Doyle's son, the owner of a contract carrier in the State of Washington, "would be taken care of and would continue to do business with Hasbro." Amended Complaint 41. In both cases, the complaint suggests that Hassenfeld's comments were "an effort to right the wrong done to plaintiffs," amended complaint 37, or to "make amends," amended complaint 41. Several of the required elements of common law fraud are absent from these allegations. First, there is no allegation that Hassenfeld's statements were knowingly false. In fact, the complaint states that the promises were an "effort to right a wrong done to plaintiffs," suggesting that Hassenfeld intended to keep these promises. Second, there is no allegation that the -14- statements were made with an intent to deceive. Finally, neither reliance nor injury is alleged. The district court also dismissed the claims of fraud against Laudon and Thibodeau. Because plaintiffs-appellants have failed to argue for the reversal of these dismissals on their appeal, we do not review them here. There remains the questions of whether plaintiffs have claimed that defendants Hassenfeld, Thibodeau, and Oliva were part of a larger conspiracy to defraud and whether a claim of fraud is made against Hasbro. The district court ruled that "the conclusory allegations throughout the amended complaint are insufficient under Fed. R. Civ. P. 9(b)'s strict requirement that fraud be pled with particularity." Doyle, 884 F. Supp. at _____ 41. Appellants respond that notice is the principal purpose of any pleading, including fraud, and Rule 9(b) "does not require the claimant to set out in detail all of the facts upon which he bases his claim, nor does it require him to plead detailed evidentiary matters." Collins v. Rukin, 342 F. Supp. 1282, 1292 _______ _____ (D. Mass. 1972). There is a well-developed body of case law surrounding the application of Rule 9(b) in this circuit.5 See, e.g., ___ ____  ____________________ 5 Rule 9 reads, in relevant part: (b) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. -15- Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st ________ ____________________________ Cir. 1994); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 ______ ______________________ (1st Cir. 1991); New England Data Servs. Inc. v. Becher, 829 F.2d ____________________________ ______ 286, 288-90 (1st Cir. 1987); Wayne Inv. Inc. v. Gulf Oil Co., 739 _______________ ____________ F.2d 11 (1st Cir. 1984). In New England Data Services, we held _________________________ that the case law interpreting and applying Rule 9 in cases dealing with general fraud and securities fraud applies to RICO cases. The "degree of specificity [in RICO cases] is no more nor less than we have required in general fraud and securities cases." 829 F.2d at 290. Rule 9 imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage "strike suits," and to prevent the filing of suits that simply hope to uncover relevant information during discovery. See McGuinty v. ___ ________ Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 & n.2 (1st Cir. _________________________ 1980). In McGuinty, this court stated that "[t]he clear weight ________ of authority is that Rule 9 requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." Id. at 228. "[M]ere allegations of fraud, ___ corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy  ____________________ Fed. R. Civ. P. 9(b). -16- the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 ______ _____ (1st Cir. 1985) (citations omitted). We agree with the district court that the allegations of conspiracy included in the amended complaint are insufficient to satisfy the requirements of Rule 9(b). The complaint simply states that the defendants: worked closely together and were aware of the others' conduct. These defendants conspired to use H.P. Leasing for the benefit of Hasbro and their own personal financial gain. It is not certain what the specifics of the conspiracy entailed or how exactly defendants Thibideau [sic] and Hassenfeld benefited from that conspiracy. Amended Complaint 24. Elsewhere in the Amended Complaint, these conclusory allegations are repeated: "defendants worked together to shut down H.P. Leasing," Amended Complaint 28; "all defendants were suddenly acting to terminate H.P. Leasing," Amended Complaint 38. The amended complaint includes no specification of the time, place, and content of an alleged false representation as required by McGuinty. In addition, no claim ________ can survive as against Hasbro in light of the fact that no claim has been made against any of the other defendants through whom Hasbro could act. -17- Because the plaintiffs-appellants have failed to meet the requirements of Rule 9, we affirm the district court's ______ dismissal of Count V as against Hassenfeld and Hasbro.6 C. Breach of Contract (Count I) C. Breach of Contract (Count I) ____________________________ In order to sustain Count I's breach of contract claim, plaintiffs must plead: (1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged. See Singarella v. City of Boston, 173 N.E.2d 290, 291 ___ __________ _______________ (Mass. 1961); Petricca v. Simpson, 862 F. Supp. 13, 17 (D. Mass. ________ _______ 1994). Plaintiffs-appellants are mistaken in their belief that they "need no more than to allege that the facts [demonstrate a] breach of that contractual relationship." Appellants' Brief at 40. "[I]t is essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." Pollock v. New England Tel. & Tel. Co., 194 N.E. 133, _______ ___________________________ 136 (Mass. 1935). Appellants fail to do so. The amended complaint fails to state the nature of the alleged contract with any specificity. There is no presentation of the terms of a contract, its duration, or even when it was formed. Nor does the Amended Complaint explain what obligations were imposed on each of the parties by the alleged contract. It  ____________________ 6 The district court states that "Count V must be dismissed against Thibodeau and Oliva as well [as Hassenfeld]." Doyle, 884 _____ F. Supp. at 41. The Amended Complaint does not, however, allege that Oliva has committed fraud, and, therefore, he is not implicated in our discussion. -18- does not plead that plaintiffs were ready to perform under the contract or that the defendants' breach prevented them from performing, and it does not identify the damages attributable to the breach. Conclusory statements that "Hasbro and its executives failed to meet their contractual requirement," amended complaint 34, are insufficient to satisfy the pleading requirements. Because appellants have failed to state a claim for breach, we need not address the argument made in their brief that the alleged contract was, in fact, an at-will employment contract and that it was breached in bad faith. Nor do we address the question of whether the individual defendants are shielded from liability on the ground that an agent for a disclosed principal cannot be personally liable for the principal's conduct. See ___ Doyle, 884 F. Supp. at 39. _____ For the foregoing reasons, we affirm the dismissal of ______ the breach of contract claim. -19- D. Intentional Infliction of Emotional Distress D. Intentional Infliction of Emotional Distress __________________________________________________ (Count IV) (Count IV) __________ Count IV of the amended complaint alleges a claim of intentional infliction of emotional distress against Laudon, Oliva, and Thibodeau.7 The relevant requirements for this claim in Massachusetts were set forth in Agis v. Howard Johnson Co., ____ __________________ 355 N.E.2d 315 (Mass. 1976). A claim for intentional infliction of emotional distress requires "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it.'" Id. at 318-19 (citations omitted). The standard for making a ___ claim of intentional infliction of emotional distress is very high in order to "avoid[] litigation in situations where only bad manners and mere hurt feelings are involved." Id. at 319. ___ Recovery on such a claim requires more than "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages  ____________________ 7 Plaintiffs-appellants have not appealed the dismissal of this claim against Oliva. -20- for another tort." Foley v. Polaroid Corp., 508 N.E.2d 72, 82 _____ _______________ (Mass. 1986). We agree with the district court that "[a]ssuming the truth of all the allegations in the amended complaint, the conduct complained of does not as a matter of law amount to extreme and outrageous behavior beyond all possible bounds of decency and which are utterly intolerable in a civilized community." Doyle, 884 F. Supp. at 40 (citations omitted). "Nor _____ has Doyle even attempted to plead severe distress of a nature that no reasonable [person] could be expected to endure it." Id. ___ Accordingly, we affirm the dismissal of the claim of ______ intentional infliction of emotional distress. E. Interference with Advantageous Business E. Interference with Advantageous Business __________________________________________________ Relationships (Count III) Relationships (Count III) _________________________ Count III of the amended complaint alleges "intentional and malicious interference with the plaintiffs' advantageous business relationships" against Laudon, Oliva, and Thibodeau.8 Amended Complaint 50. The elements of the tort of interference with an advantageous relationship include: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." American Private Line _____________________ Servs., Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 36 (1st ____________ ________________________  ____________________ 8 Plaintiffs-appellants have not appealed the dismissal of this claim as against Oliva. -21- Cir. 1992) (citing United Truck Leasing Corp. v. Geltman, 511 ___________________________ _______ N.E.2d 20 (Mass. 1990)). Implicit in the above requirements for intentional interference in a business relationship is that the relationship be lawful. See Chemewa Country Golf, Inc. v. Wnuk, 402 N.E.2d ___ ___________________________ ____ 1069, 1072 (Mass. App. Ct. 1980) (requiring that the complained- of acts be "calculated to cause damage to the plaintiffs in their lawful business" (emphasis added)). Plaintiffs-appellants argue ______ that defendants-appellees interfered with a business relationship that consisted of allegedly unlawful kickbacks in exchange for business. As such, the business relationship in question was not lawful, and plaintiffs cannot recover on their claim. Accordingly, we affirm the district court's dismissal ______ of Count III against Laudon and Thibodeau. V. CONCLUSION V. CONCLUSION For the reasons discussed herein, we affirm the ______ district court's dismissal on all claims appealed by plaintiffs- appellants: the RICO count against all defendants, Count I against all defendants, Counts III and IV against Laudon and Thibodeau, Count V against Hasbro and Hassenfeld (and noting that plaintiffs-appellants failed to raise the liability of Laudon and Thibodeau), and Count VI against Hasbro. Finally, we note that plaintiffs-appellants have filed an overly long brief. Although the brief is less than the permissible fifty pages, it is not double spaced as required, Fed. R. App. Proc. 32(a), making the effective length of the -22- brief considerably longer. Additionally, we are able to find no reason for the length of the brief. Despite the extra length, the brief failed to adequately present the claims of appellants or even to clearly identify the claims being appealed. See In re ___ _____ M.S.V., Inc., 892 F.2d 5, 6 (1st Cir. 1989) ("[W]hether or not we ____________ grant permission to file an overly long brief, we may assess special costs if we subsequently conclude that the extra length was unnecessary and did not help."). "We believe it appropriate to discourage the filing of excessively long briefs in this court," id., and we believe it appropriate to discourage parties ___ from attempting to flaunt the page limits by submitting briefs with improper line spacing. Accordingly, we assess double costs against appellants. -23-