**Robert E. WASKO, Plaintiff,**

**v.**

**COMMONWEALTH OF PUERTO RICO; and Pamela Kilmer, Defendants.**

**Civil No. 01–1377–DRD.**

United States District Court, D. Puerto Rico.

Jan. 4, 2002.

---

Antonio Bauza–Torres, Hato Rey, PR, for plaintiff.

Salvador J. Antonetti–Stutts, Director, Department of Justice of PR, Federal Litigation Division, San Juan, PR, for defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court are Defendant, the Commonwealth of Puerto Rico's Motion to Dismiss (Docket No. 5) and Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss (Docket No. 9). For the following reasons, the Court **GRANTS** the Commonwealth's Motion to Dismiss and, therefore, orders this case to be **DISMISSED** with prejudice.

### I

### FACTUAL BACKGROUND

As the Court indulges into the pending motions, it is mindful that all the well-pleaded factual averments contained in the complaint must be accepted as true, while at the same time drawing all reasonable inferences from the allegations in favor of the plaintiff. *Doyle v. Hasbro, Inc.,* 103

F.3d 186, 190 (1st Cir.1996). Therefore, the Court begins by reviewing the facts in the light most favorable to Plaintiff, Robert E. Wasko (Plaintiff or "the father").

Plaintiff and Co-defendant, Pamela Kilmer (Ms. Kilmer or "the mother"), are the unmarried parents of Marshall Wasko ("the minor" or "the child"), a minor born in the State of Pennsylvania in 1990. After their separation, a controversy ensued over the person that should retain custody over the child. A local court in Pennsylvania eventually issued two orders (first in 1992 and then in 1993) granting both parents shared legal custody. Notwithstanding, the child would reside primarily with the mother while the father would enjoy occasional custody and regulated visitation rights. The mother later sought modification of the Pennsylvania court's orders, but was denied in 1995.

In June 25, 1996 the mother removed the child from the jurisdiction of the State of Pennsylvania. Several weeks later, on July 22, 1996, she filed a claim against Plaintiff in the State of Florida alleging the child had been sexually molested by his father. On July 16, 1996, a petition for criminal contempt of court was filed in Pennsylvania. On August 5, 1996 the Florida police issued a state-wide alert. On September 11, 1996, a Pennsylvania court held her to be in criminal contempt and, thus, issued a warrant for her arrest. The Pennsylvania tribunal also ordered the return of the minor to the jurisdiction of Pennsylvania and granted custody to the father. However, the mother immediately fled to the jurisdiction of the Commonwealth of Puerto Rico.

Soon after her arrival in Puerto Rico, the mother contacted local authorities and again accused the father of sexually abusing their child. Agents of the Federal Bureau of Investigation (FBI), nonetheless, arrested her and charges were brought in federal court. Immediately after her arrest, on December of 1997, the Department of the Family of Puerto Rico was granted **legal** and **physical** custody over the child. Nevertheless, she regained **physical** custody of the child after she posted bail, but only **under the strict supervision** of the Department of the Family.

On December 2, 1997, a court in Pennsylvania issued another order awarding custody over the child to the Children and Youth Services of Lebanon County, in Pennsylvania. Similarly, in Puerto Rico, the Department of the Family filed an action against the mother in a local court requesting legal custody over the child, which was granted preliminarily. On December 17, 1997, Puerto Rico's First Instance Court issued an order assuming jurisdiction in the case and granting legal custody to the Department of the Family and physical custody to the mother under strict governmental supervision. That court also provided that the child was to be sent to the Children and Youth Services of Lebanon County, in Pennsylvania, in the event that the mother was arrested and extradited to that State.

Eventually, the mother was extradited to Pennsylvania where she was held on a $200,000 bail, pending contempt and parental kidnapping charges. Officials of the Children and Youth Services of Lebanon County then unsuccessfully attempted to regain custody over the child, pursuant to the outstanding judicial orders of that State. Furthermore, on May 6, 1998, a court in Puerto Rico issued a second order modifying the previous order, determining that the minor was to remain in Puerto Rico under the legal custody of the Department of the Family, provided that another court with jurisdiction would not rule differently. On October 29, 1998 a Pennsylvanian court again determined that cus-

tody over the child was to be returned to Children and Youth Services of Lebanon County. Although officials of Lebanon County traveled to Puerto Rico seeking custody of the child in the name of that jurisdiction, the complaint indicates that they were "once again denied access."

Pursuant to the facts averred in the complaint, the father "did not receive adequate notice nor was [he] allowed intervention at any of the proceedings in Puerto Rico," even after having requested leave to intervene on four different occasions. Appeals followed in the Commonwealth's courts, also to no avail. On March 30, 2001, the father filed this suit alleging this Court has jurisdiction to hear the matter under 28 U.S.C. § 1343, "as well as federal question jurisdiction." Specifically, the complaint states two causes of action: the first, "under 42 U.S.C. § 1983 and the Due Process of the Fifth and Fourteenth Amendments to the Constitution of the United States"; the second cause of action is brought pursuant to the Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A, as well as under the Full Faith and Credit Clause of the Constitution.

## II

## MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. *Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company*, 267 F.3d 30, 33 (1st Cir.2001); *Doyle*, 103 F.3d at 190. Dismissal under FED. R. CIV. PROC. 12(b)(6) is appropriate only if the facts alleged by the plaintiff, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir.1988).

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." *Id.; see also Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999).

## III

## ANALYSIS

The Court concludes that the case at bar should be dismissed for failure to state a claim under FED. R. CIV. PROC. 12(b)(6). Various grounds support this conclusion, to wit: Plaintiff's claims against the Commonwealth are barred by the Eleventh Amendment; he has failed to state a claim under § 1983; and the PKPA does not provide a private cause of action sustainable in federal courts. The Court examines each ground *seriatim*.

## A. ELEVENTH AMENDMENT IMMUNITY

 The Eleventh Amendment renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state. *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir.1993); *De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991); *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 776 n. 7 (1st Cir.1981); *Pérez v. Rodríguez Bou*, 575 F.2d 21 (1st Cir.1978).

There are, of course, exceptions to this rule. Specifically, the Eleventh Amendment protection does not apply under four (4) circumstances: 1) when a state consents to be sued in a federal forum; 2) when a state waives its own immunity by statute or the like; 3) when Congress abrogates state immunity; or, 4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's Bar. *Metcalf,* 991 F.2d at 938. *See also Ramírez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 697 (1st Cir.1983) (the Eleventh Amendment "bars federal court lawsuits by private parties insofar as they attempt to impose liabilities necessarily payable from public coffers, unless the state has consented to suit or unless the protective cloak of the amendment has been doffed by waiver or stripped away by congressional fiat").

In the instant case Plaintiff does not advance the applicability of any of the above exceptions to the Eleventh Amendment's immunity. Rather, Plaintiff argues that his causes of action against the Department of the Family of Puerto Rico (DFPR) fall under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). (Docket 9, p. 11). Plaintiff, however, has erred in his interpretation of the cause of action created by *Young. Young* applies only to causes of action for injunctive relief against **officers** in their official capacities, **not against states** as such. Even if this case were brought against the DFPR, it would nonetheless be dismissed.

In *Metcalf* the First Circuit stated the test that Courts must apply in determining the applicability of Eleventh Amendment immunity to an arm or instrumentality of the state:

> The Eleventh Amendment's primary concern is to minimize federal courts' involvement in disbursal of the state fisc. It follows that "when the action is in

essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit. . . . ." Generally, if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment.

991 F.2d at 939 (internal citations omitted). *See also Ford Motor Co. v. Dept. of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Futura Development v. Estado Libre Asociado,* 144 F.3d 7, 10 (1st Cir.1998)(Eleventh Amendment immunity lies even for alter egos of the Commonwealth of Puerto Rico); *Nieves v. University of Puerto Rico,* 7 F.3d 270, 272 (1st Cir.1993)(Commonwealth of Puerto Rico's arms are immune under the Eleventh Amendment).

■ There is no controversy in this case that the DFPR is an arm of the Commonwealth of Puerto Rico or that any judgment against this agency would have to be satisfied from Puerto Rico's coffers. Clearly, a claim against the DFPR would be, in practice, a claim against the Commonwealth. Hence, all claims against the Commonwealth are dismissed on Eleventh Amendment grounds.

Likewise, there is no controversy that the DFPR is an administrative arm of the Commonwealth. Accordingly, the DFPR would nonetheless be entitled to the same Eleventh Amendment immunity as that conferred upon the Commonwealth. Thus, the Court's conclusion that this case must be dismissed under the Eleventh Amendment must stand.

**B. "PERSONS" UNDER SECTION 1983**

■ Even if the Commonwealth was not protected by the Eleventh Amendment's

immunity, nonetheless, it could never constitute a "person" under 42 U.S.C. § 1983. Under § 1983 a state is not a person. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989). *Wilson v. Brown*, 889 F.2d 1195, 1197 (1st Cir.1989). Plaintiff's claims against the Commonwealth were brought under § 1983. Hence, on the alternative, Plaintiff's claims against the Commonwealth must be dismissed with prejudice for failure to state a claim under § 1983.

■ Furthermore, Plaintiff's claims against Ms. Kilmer cannot proceed because she is simply not a state actor. Causes of action for equitable relief and/or damages under § 1983 are authorized only against "every person who **under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory** ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (emphasis added).

■ To prevail in an action brought under 42 U.S.C. § 1983, Plaintiff must satisfy two prongs. First, he must prove that he was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985). Second, he must have been deprived of his right, immunity or privilege, **by a person acting under color of state law.** *Id.* The Court can easily sidestep the first prong since Plaintiff clearly fails at proving the second, to wit, that Ms. Kilmer acted under color of state law. Hence, because this is a pivotal element of a § 1983 claim, Plaintiff's claims

against Ms. Kilmer must be dismissed with prejudice for failure to state a claim under § 1983.

Notwithstanding, Plaintiff refuses to admit that his claim under § 1983 is unavailing, claiming instead that private parties have sometimes been considered "state actors" for purposes of that section. In support thereof, he merely cites the Supreme Court's decision in *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). His reliance is mislaid, however. In *Wyatt* the Supreme Court answered the question of whether private defendants charged with § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional are entitled to qualified immunity from suit. The Court held that they were not. 504 U.S. at 159, 112 S.Ct. at 1829. More specifically, the Court analyzed whether private persons, who conspire with state officials to violate constitutional rights, have available the good faith immunity applicable to public officials. Again, the Court answered that question in the negative. Clearly, **nothing** in the case at bar relates to replevin, garnishment, and attachment statutes. Hence, the Court fails to see *Wyatt*'s application to this case, and Plaintiff fails to enlighten the Court in that respect. Therefore, Plaintiff's claims against Ms. Kilmer must be dismissed with prejudice for failure to state a claim under § 1983.

## C. JURISDICTIONAL LIMITS OF FEDERAL COURTS REGARDING DOMESTIC RELATIONS DISPUTES EVEN AFTER THE PKPA

The only remaining issue is whether Plaintiff has a **private** cause of action sustainable in federal court. Although Plaintiff's claims are clearly barred under the Eleventh Amendment and § 1983, the Court turns to the remaining issue of

whether Plaintiff has a sustainable, federal private cause of action, in order that the inquiry may be complete.

█ It is hornbook law that federal courts may not exercise diversity—or for that matter, supplemental—jurisdiction over domestic relations matters such as divorce and custody disputes. *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859). The Supreme Court has explained that:

> As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

*Ankenbrandt*, 504 U.S. at 704, 112 S.Ct. 2206.

In *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the Supreme Court specifically addressed the issue presented in this case. That Court had to decide whether the PKPA furnished an implied private cause of action in federal courts so as to determine which of two conflicting state custody decisions should prevail. The Court answered in the negative.

In *Thompson* a California state court initially awarded joint custody over the child. The order, however, became infeas-

ible because the mother moved to Louisiana soon thereafter. The California court granted her sole custody pending an investigator's report, whereupon the court intended to make a more studied custody determination. After respondent obtained a Louisiana court order enforcing the California decree and awarding her sole custody, the California court, having received and reviewed the investigator's report, entered an order granting sole custody to the father. The father then filed suit in a federal district court seeking an order declaring the Louisiana decree invalid and the California decree valid, and enjoining the enforcement of the Louisiana decree. The district court dismissed the complaint "for lack or subject-matter and personal jurisdiction." The Appeals Court affirmed, but on the ground that petitioner had failed to state a claim upon which relief could be granted, under FED. R. CIV. PROC. 12(b)(6).

Justice Marshall, writing for the Court, rejected from the outset the notion that a federal court could be "litigating between two State court decrees." 484 U.S. at 185, 108 S.Ct. at 519. Moreover, he noted that "[i]nstructing the federal courts to play Solomon where two state courts have issued conflicting custody orders would entangle them in traditional state-law questions that they have little expertise to resolve. This is a cost that Congress made clear it did not want the PKPA to carry." *Id.*, at 186–87, 108 S.Ct. 513 (emphasis added; footnotes omitted). Upon reviewing the background, language, and legislative history of the PKPA, the Court held that **it does not create a private right of action in federal court** to determine the validity of two conflicting custody decrees:

> [T]he context, language, and history of the PKPA together make out a conclu- · sive case **against** inferring **a cause of**

action in federal court to determine which of two conflicting state custody decrees is valid .... We note ... that **ultimate review remains available in this Court for truly intractable deadlocks.** In addition, the unspoken presumption in petitioner's argument is that the States are either unable or unwilling to enforce the [PKPA]. This is a presumption we are not prepared, and more importantly, Congress was not prepared, to indulge. State courts faithfully administer the Full Faith and Credit Clause every day; now that Congress has extended full faith and credit requirements to child custody orders, we can think of no reason why the courts' administration of federal law in custody disputes will be any less vigilant. Should state courts prove ... obstinate ..., **Congress may choose to revisit the issue. But any more radical approach to the problem will have to await further legislative action**[.]

*Id.* (emphasis added).

 Plaintiff is thus barred from pursuing his claims in the Federal District Court, pursuant to the precedent established in *Thompson.* Thus clearly this Court is prevented from entertaining the case because there is no private cause of action under the Parental Kidnapping Act. *Id.* Ultimate review of two states' conflicting deadlock as to child custody clearly lies in appellate review at the Supreme Court. *Id.*

## IV

### CONCLUSION

In the case at bar, the Court concludes that dismissal is warranted because Plaintiff has failed to state a claim under FED. R. CIV. PROC. 12(b)(6). This conclusion is firmly supported, first, by the fact Plaintiff's claims against the Commonwealth are barred by the Eleventh Amendment. Moreover, even if the Commonwealth was not protected by the Eleventh Amendment's immunity, nonetheless, it could never constitute a "person" under 42 U.S.C. § 1983. And lastly, Plaintiff's complaint should be dismissed because the Parental Kidnaping Act does not provide a private cause of action sustainable in federal courts. *Thompson,* 484 U.S. at 187–88, 108 S.Ct. 513. Therefore, Plaintiff is barred from pursuing his claim in this Court.

**WHEREFORE,** the Court hereby **GRANTS** the Commonwealth's Motion to Dismiss (Docket No. 5) and, therefore, orders this case to be **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

#### *JUDGMENT*

For the reasons set forth in the Opinion and Order issued on this same date, this case is **DISMISSED WITH PREJUDICE.**