**GOYA DE PUERTO RICO, INC., Plaintiff,**

v.

**ROWLAND COFFEE, et al., Defendants.**

**CIVIL NO. 01-1119 (DRD).**

United States District Court, D. Puerto Rico.

March 28, 2002.

Eric A. Tulla, Rivera Tulla & Ferrer, Hato Rey, PR, for Goya De Puerto Rico, Inc.

Eugenio C. Romero, Hato Rey, PR, for Rowland Coffee Roasters Inc.

Ricardo F. Casellas, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Bustelo Coffee Co.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiff, Goya de Puerto Rico, Inc. ("Goya"), filed the instant case pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, on January 24, 2001. (Docket No. 1). On January 17, 2002, the Court referred this case to Magistrate Judge Gustavo Gelpi for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B); FED.R.CIV. P. 72(b); and Local Rule 503. (Docket No. 44). The Magistrate filed a Report and Recommendation ("R & R") on February 7, 2002 (Docket No. 45). In his report, the Magistrate recommended that the motion to dismiss filed by co-defendant's (Tetley USA, Inc., hereinafter "Tetley") be denied. Tetley filed its objections thereto, on February 22, 2002. (Docket No. 46). After considering Tetley's objections, and reviewing *de novo* the R & R, the Court determines that Tetley's motion to dismiss is hereby **GRANTED.** (Docket No. 10).

## I

### MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 510.2(A); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

Within ten days of being served with a copy, any party may serve and file writ-

ten objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. *See* 28 U.S.C. § 636(b)(1).

■ However, pursuant to FED.R.CIV. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See generally United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

Provided Goya has objected to all the determinations addressed by the Magistrate, the Court shall make a *de novo* determination of the R & R.

## II

## MOTIONS TO DISMISS

As the Magistrate correctly indicated, when deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in plaintiff's favor. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Furthermore, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in plaintiff's favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." *Id.; see also Doyle,* 103 F.3d at 190.

## III

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant Rule 12(b)(6), the Court shall inquire whether a liberal reading of Goya's

complaint can reasonably admit of claim—not only against Rowland Coffee Roasters, Inc. (hereinafter "Rowland")—**but also against Tetley.** *Litton Indus., Inc.,* 587 F.2d at 74. While the legal issues this case raises are not amenable to easy solutions, the factual scenario of this case is simple.

Since 1984, Goya was the exclusive distributor in Puerto Rico for a brand of coffee named "Bustelo," which Tetley owned. Thus, Goya acted as Tetley's "exclusive distributor," pursuant to Puerto Rico's Law 75, 10 P.R. STAT. ANN., § 278 *et seq.* (1997). Goya would, therefore, routinely buy Bustelo coffee from Tetley—a corporation organized pursuant to the laws of New York—and then distribute and resale it throughout Puerto Rico and other locations in the Caribbean. Hence Goya was responsible for introducing Bustelo to consumers in Puerto Rico's market, and successfully accomplished island-wide distribution and acceptance. In return for Goya's efforts, both Goya and Tetley were rewarded with significant profits.

Notwithstanding, in early 2000, Tetley sold its trademarked, brand name, "Café Bustelo," to another company, Rowland. Pursuant to the amended complaint,[1] Rowland—a corporation organized and doing business pursuant to the laws of Florida, with its principal place of business in Miami—acquired the Café Bustelo brand, **"and assumed Tetley's obligations to [Goya] as exclusive distributor** for Café Bustelo brand coffee."[2] Furthermore, according to the pleadings, Goya and Rowland "continued the previously existing business relationship whereby [Goya] distributed the Bustelo brand coffee on an exclusive basis in Puerto Rico[, and] Rowland announced it would continue to honor

all agreements regarding the Bustelo brand coffee."[3] Therefore, the Court accepts as true Goya's well-pleaded factual claim that, Rowland not only acquired the brand "Café Bustelo," but **it also assumed Tetley's obligations to Goya as exclusive distributor in Puerto Rico and the Caribbean.** *Doyle,* 103 F.3d at 190.

Nevertheless, several months later, the business relationship between Goya and its new principal, Rowland, soured. To wit, Rowland expressed a sudden interest in acquiring Goya's exclusive distribution rights in Puerto Rico, in order to assume the responsibility of selling and distributing Bustelo coffee directly. Goya rejected Bustelo's proposal, and expressed continued interest in distributing Café Bustelo in Puerto Rico in exclusivity. Moreover, in view of the fact that Bustelo was the only brand of coffee Goya was distributing, Goya also expressed interest in distributing one of Rowland's other brands, "Café Pilón." After continued discussions regarding the matter, Goya finally expressed its willingness to sell its distribution rights to Rowland, and disclosed the price that Rowland would have to pay in return. However, no final agreement was reached.

Soon thereafter, Rowland began engaging in unilateral actions detrimental to Goya's distribution rights. Among other averments, Rowland began increasing its prices, notwithstanding previous pricing agreements with Goya; it failed to honor inventories ordered by Goya, which in turn were necessary to honor its levels of inventory for its clients throughout the Caribbean; Rowland ceased to provide customary marketing and promotional offers to suit Goya's local market, while at the same time, it began to unfairly lower the price of the other brand, "Café Pilón," and offered

---

1. Amended Complaint, Docket No. 28.

2. *See id.,* p. 3 (emphasis added).

3. *Id.*

extraordinary promotional incentives for that brand; Rowland also changed Bustelo's product bar code, so as to create problems at checkout counters when costumers attempted to buy Bustelo coffee. Finally, without notifying Goya, Rowland began selling and distributing Bustelo coffee in Puerto Rico, but at a lower price than the price provided to Goya in wholesale. [3]

■ Goya promptly reacted by formally advising Rowland that such acts were illegal and violated Goya's rights, under Puerto Rico law. Notwithstanding. Rowland continued. In fact, in November 2000, and without previously notifying Goya, Rowland unilaterally announced to the Puerto Rico trade—including Goya's clients—that it was assuming the distribution of the Bustelo brand of coffee in Puerto Rico and the Virgin Islands.[4] As a result, Rowland's acts have swayed the local market away from Bustelo's coffee brand, and destroyed "years of effort by [Goya] to obtain both consumer acceptance and shelf space at the retail level." [5]

On January 24, 2001, Goya filed this action against Rowland, Bustelo Coffee Company, **and Tetley.** On June 12, 2001, Tetley filed its motion to dismiss. (Docket No. 10).

# IV

## PUERTO RICO'S LAW 75

For purposes of the motion to dismiss **only,** the Court assumes as true that Rowland is liable to Goya under Law 75, for terminating without just cause the dealer contract between them. But the issue which the Court must ascertain is whether a liberal reading of Goya's complaint can reasonably admit of claim—not only against Rowland—but **also against Tetley.**[6] The answer to this question, however, lies in the answer to a more crucial question. To wit, the pivotal inquiry here, is not whether Law 75 admits joint liability by two "principals," as the parties seem to suggest. Instead, the proper inquiry in this case is whether a former "principal"—Tetley—may be liable to Goya after as-

---

4. As to Goya's business outreach in the Virgin Islands, or for that matter, any other Caribbean island, the Court is mindful that Puerto Rico's Law 75 may not have extraterritorial effect. It is well settled that Puerto Rico's laws cannot be interpreted to have an extraterritorial effect. *See Green Giant v. Tribunal Superior,* 104 P.R.R. 682, 692, 104 D.P.R. 489, 1975 WL 38682 (1975)(Constitution and laws of P.R., overtime after eight hours of work, not applicable to workers hired in P.R. but working and residing in the United States). Accordingly, Law 75 can only protect Goya as a dealer in Puerto Rico. *A.M. Capen's Co., Inc. v. American Trading,* 202 F.3d 469, 473–75 (1st Cir.2000)(Law 75 defines a "dealer" as a person "in Puerto Rico").

5. *Id.,* p. 4.

6. Goya's complaint states that **Rowland** is liable to it under Law 75. With respect to Tetley, Goya's complaint states that it is liable "in the alternative." Specifically, the ninth

paragraph of Goya's Amended Complaint ·states as follows:

> On or about February 2000, Rowland acquired the Café Bustelo brand and business from Tetley and assumed Tetley's obligations to Plaintiff as exclusive distributor for Café Bustelo brand coffee. **Alternatively,** Tetley breached Plaintiff's exclusive distribution rights for Café Bustelo brand coffee by selling such rights to [Rowland] without compensating Plaintiff. Subsequent to that date, Plaintiff and Rowland continued the previously existing business relationship whereby Plaintiff distributed Bustelo brand coffee on an exclusive basis in Puerto Rico. Rowland announced it would continue to honor all agreements regarding the Bustelo brand coffee. **Alternatively,** Bustelo **and/or Tetley** refused to recognize Plaintiff's exclusive distribution right to Café Bustelo brand coffee.

*See* Docket No. 28, p. 3 (emphasis added).

signing its contractual rights to "Café Bustelo" to a third party assignee—Rowland. Simply put, the critical inquiry here is one of multiple liabilities under Puerto Rico's law regarding assignment of rights under a contract. Clearly, the question of whether Law 75 admits joint liability by two "principals" is necessarily preceded by, and unquestionably depends on, the more crucial question of whether Puerto Rico's contract law admits liability to be imposed upon the assignor who sells or transfers a brand name to a third party (the assignee).[7]

Puerto Rico's Law 75 governs the business relationship between "principals" and the locally appointed "distributors" who market their products in Puerto Rico. *See Caribe Industrial Systems, Inc. v. National Starch and Chemical Co.*, 212 F.3d 26, 29 (1st Cir.2000). Law 75 was enacted with the specific purpose of avoiding the inequity of arbitrary termination of distribution relationships once the distributor has developed a local market for the principal's products or services. As such, Law 75 limits the principal's ability to unilaterally end the relationship except for "just cause." 10 P.R. LAWS. ANN., § 278a. As the House Commerce and Industry Committee stated, when enacting the statute, in the "Statement of Motives of Act No. 75":

> The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires, or agent or without fully eliminating

them, such enterprises gradually reduce and impair the extent of their previously established relationship, as soon as these have created a favorable market and without taking in account their legitimate interests.

*See Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F.Supp. 912, 918 (D.Puerto Rico 1985)(*citing* Vol. 18, Part IV, Diario de Sesiones 1724).

Under Law 75, the protection afforded to distributors has been extended to include the type of conduct of a principal which is "detrimental to the established relationship," even when the contract was not formally terminated. *See Caribe Industrial Systems*, 212 F.3d at 29; *see also Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 317–18 (1st Cir.1999). The Statute expands on this definition by explaining that a "dealer's contract" is a relationship established between a dealer and a principal whereby "irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former **actually and effectively** takes charge of the distribution of merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico." 10 P.R. LAWS. ANN., § 278(b) (emphasis added).

Section 278a provides that, "no principal ... may **directly** or **indirectly** perform any act detrimental to the established relationship...." 10 P.R. LAWS. ANN., § 278a (emphasis added). The term "detrimen-

---

**7.** The Court is mindful that this is a first impression case, provided the issue of whether the act of selling its product to another principal may be actionable under Law 75, has never been directly addressed by any court interpreting Law 75. However, the Court notes at the outset that if no liability may be imposed on the assignor of a contractual right under Puerto Rico contract law, then that would clearly render the inquiry of

whether Law 75 admits "joint liability" by "two principals" unnecessary. In other words, if the law provides that an assignor may be liable for transferring or negotiating said rights to a third party (the assignee), **only then** would the issue of whether "joint liability" by "two principals" is admissible under Law 75 would arise, and **only then** would the Court have to reach a conclusion as to said issue.

tal" which appears in the English version of the statute is a translation for "menoscabo" which is synonymous of the words "impairment," "diminution," "deterioration," or "undermining." [8]

Law 75 enumerates some instances of impairment by way of illustration and establishes a rebuttable presumption of impairment when, for example a principal bypasses a dealer by distributing merchandise directly; appoints additional dealers in contravention of the agreement; fails to adequately fill orders; or when the principal arbitrarily changes the transportation and/or payment terms. *See* 10 P.R. LAWS. ANN., §§ 278a–1(b)(1)(4); *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 318 (1st Cir.1999). The statute, of course, fails to address every instance of impairment that may be possible, or every contractual scenario that could possibly unfold in distributorship contracts under Law 75.

## V

### ASSIGNMENT OF RIGHTS UNDER PUERTO RICAN CONTRACT LAW

As stated above, section 278a of Law 75 provides that, "no principal ... may directly or **indirectly** perform any act detrimental to the established relationship...." 10 P.R. LAWS. ANN., § 278a (emphasis added). Thus, under Law 75, it is clear that liability may be born out of acts of impairment which may be direct and explicit, or on the other hand, indirect or ensconced. But as stated above, the critical inquiry in this case is whether Puerto Rico's contract law admits liability to be imposed upon the assignor—Teltley—who sells or transfers a brand name to a third party (the assign-

ee)—Rowland. More clearly expressed, the issue here is whether Goya (the obligor in a preexisting dealership contract) may sustain a claim against Tetley (the obligee or assignor) for selling or transferring the contractual rights it possessed to Rowland (the third party or assignee), pursuant to Puerto Rico's contract law. After studying the matter closely, the Court finds that, *prima facie*, Goya may not legally sustain recovery against Tetley, the assignor or obligee, and therefore dismissal of Tetley from this action is appropriate, pursuant to the facts alleged in the amended complaint.

■ In contract law, the "assignment of rights" is defined as "the transfer of rights from a party to contract to a third party." BLACK'S LAW DICTIONARY 116 (7th ed.1999). According to the Restatement, an "assignment" is the transfer of a right (only) by its owner (sometimes "the obligee" or "assignor") to another person (the "assignee") whereby the assignee acquires a right to performance by the obligor and the assignor's right to that performance is extinguished. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 316 Comment c; §§ 9–317(1); *see also* 6 AM.JUR.2D *Assignments* § 161 (1999) and E. FARNSWORTH, CONTRACTS 746 (1982). However, the Court is mindful that, because jurisdiction in this case is premised on diversity, Puerto Rico's contracts law is applicable exclusively. [9]

In Puerto Rico, contract law generally follows a civil law tradition, governed by the Civil Code, not common law. Under civil law, the assignment of rights in Spanish is generally referred to as "cesión o

---

**8.** *See* SIMON AND SCHUSTER'S INTERNATIONAL DICTIONARY 1348, Part II:Spanish–English (1973).

**9.** It is well settled that in diversity cases, federal courts are to apply the substantive law

corresponding the state or territory where the federal district court is found. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

asunción de contratos" which literally translated means the "assignment or assumption of contracts." Puerto Rico's Civil Code, however, does not specifically establish rules for the assignment of rights, as neither does Spain's Civil Code, which Puerto Rico's Code emulates. J. Santos Briz, Derecho Civil, Teoría Y Practica, T. IV, p. 129 (1973). However, civil law scholars in Spain have studied and discussed this legal issue thoroughly, and all agree that, similarly to common law contracts, the assignment of rights in civil law is defined as "the transfer by one of the contracting parties to a third party, of the exact and integral position occupied by the former in the assigned contract." J. Puig Brutau, Fundamentos Del Derecho Civil, T. III, Vol. I, 267 (3d ed.1988) (our translation). Accordingly, "[t]he assignor tries to obtain the freedom of all the obligations that were imposed on him in the basic contract, and, at the same time, transmits all of the rights that corresponded to him by virtue of that contract. The assignee acquires these rights and procures the burden of those obligations as if he was the initial party in the contract." Id. (our translation).

 For assignment of rights to occur, "the three interested parties must concur in the act of the assignment: the party that transfers its position in the contract [the assignor], the assignee party that will acquire it and the obligor, that will be affected by the change of the person with whom he had contracted." J. Puig Brutau, Compendio De Derecho Civil, Vol. II, pp. 243–244 (3d ed.1988) (our translation). And the consent of the obligor is of essential importance "because the liberation of the assignor as a debt-

or of the party with whom initially had contracted can only be obtained with his will." Id. (our translation)(emphasis added).[10] Therefore, "[t]he perfection of the assignment of rights, accompanied by the consequent occupation of the assignor's contractual position by the assignee implies that he will automatically be liberated of his obligations toward the obligor. At the same time, the obligor is liberated in his contractual relationship with the assignor." Puig Brutau, Fundamentos Del Derecho Civil, p. 269 (our translation)(emphasis added). Hence, after the assignment of contract takes place, "the assignor becomes released from its contractual position, disappearing from the contract." LL. Puig Ferrol, M. Gete-Alonso Y Calera, J. Gil Rodríguez Y J. Hualde Sánchez, Manual De Derecho Civil, Vol. II, p. 650 (2nd ed.1998)(our translation).

 Lastly, it is important to note a key distinction between the "basic contract" and the "contract for the assignment of rights" which effectively facilitates the transfer the obligations and rights born from the basic contract. They are two separate, albeit related, contracts. The purpose of the assignment of rights, "is precisely a contract (basic contract) which should not be confused with the contract that causes the assignment (contract for the assignment of rights). At the same time, the later has his own cause, independently of the base contract since it resides in the transfer of the contract relationship assigned to a new subject." Santos Briz, Derecho Civil, Teoría Y Practica, supra, at 129.

---

10. In fact, "[t]he consent of the obligor does not have to be simultaneous to that of the assignor and assignee, but can be prior to, or subsequent to, their consent; nevertheless, it is always necessary for the assignment of contractual status to operate." Santos Briz, Derecho Civil, Teoría Y Practica, supra, at 129(our translation).

## VI

## APPLICATION

The Court is mindful that it is deciding the issues presented by the parties at the motion-to-dismiss stage, where the focus must necessarily be on the face of the complaint, and on whether a liberal reading of the same may admit Plaintiff's claims. *Litton Indus., Inc.*, 587 F.2d at 74. Pursuant to that standard, the Court finds that even the most liberal and generous reading of Goya's complaint may not admit a claim against Tetley. *Doyle*, 103 F.3d at 190. Goya's complaint alleges facts which almost completely pertain to acts performed **by Rowland.** Indeed, if those facts alleged are found to be true, that would undoubtedly render Rowland liable under Law 75. However, the complaint completely fails to state a claim **against Tetley,** much less a reasonable one. It merely states that Tetley is liable **"in the alternative,"** but nothing more. No facts are alleged to support such a claim, and nothing else in Goya's complaint even suggests or allows an inference as to the basis of Tetley's liability. The Court, of course, has no obligation to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. The Court further accepts only the "factual allegations, either direct or indirectly," contained in the complaint. *See Gooley*, 851 F.2d at 515.

However, more importantly, the Court holds that Goya is precluded from claiming liability against Tetley because, through Tetley's assignment or transfer of rights to Rowland, and Goya's acceptance, Tetley was liberated from liability. As stated above, Goya's amended complaint specifically states [11] that Rowland acquired the Café Bustelo brand, **"and assumed Tetley's obligations to [Goya] as exclusive distributor** for Café Bustelo brand coffee." [12] Furthermore, according to the pleadings, Goya and Rowland both **"continued the previously existing business relationship** whereby [Goya] distributed the Bustelo brand coffee on an exclusive basis in Puerto Rico[, and] **Rowland announced it would continue to honor all agreements** regarding the Bustelo brand coffee." [13] Therefore, pursuant to Rule 12(b)(6), the Court accepts as true Goya's well-pleaded factual claim that, Rowland not only acquired the brand "Café Bustelo," **but it also assumed Tetley's obligations to Goya as exclusive distributor in Puerto Rico.**

Further, the Court considers pivotal that Goya, as obligor, readily recognizes in its complaint that it essentially consented to the assumption of rights. Indeed, Goya's new relationship with Rowland lasted for more than seven months, before it began to sour. The complaint further states that, even after Rowland acquired Café Bustelo, they **"continued the previously existing business relationship** whereby [Goya] distributed the Bustelo brand coffee on an exclusive basis in Puerto Rico...." [14] Thus, the assignment of rights was perfected. And the perfection of the assignment of rights, accompanied by the consequent occupation of the assignor's (Tetley's) contractual position by the assignee (Rowland) necessarily implies that Tetley was automatically liberated of his obligations toward Goya, the obligor. *See* PUIG BRUTAU, FUNDAMENTOS DEL DERECHO CIVIL, at 269. Because Tetley was liberated, Goya cannot state a claim against Tetley, pursuant to the civil law

---

11. Amended Complaint, Docket No. 28.

12. *See id.,* p. 3 (emphasis added).

13. *Id.* (emphasis added).

14. *Id.* (emphasis added).

doctrine that governs the assumption of rights. Therefore, under to Rule 12(b)(6), the Court **dismisses** Goya's complaint as to Tetley, for failure to state a claim upon which relief may be granted. *See* FED. R.CIV.P. 12(b)(6).

Nevertheless, the Court, in equity, must recognize a very narrow exception, particularly because of this matter was brought before it on a Rule 12(b)(6) motion. The Court explains briefly. If Goya is capable of bringing forth **well-pleaded factual claims** that would **clearly point** that Tetley's action in selling Café Bustelo was, in truth, an **indirect** way of reaping the commercial goodwill Goya established locally, then the Court would be put in a position to consider whether Law 75 provides a remedy, under the circumstances. For example, the Court would be in such a position if Goya produced factual allegations indicating that Tetley sold Café Bustelo with a fraudulent purpose, that is, as a subterfuge to **indirectly** send Café Bustelo to Puerto Rico through indirect means. But from the amended pleadings, as now stated, **it is simply insufficient to draw any kind of conclusion as to these possible venues of liability against Tetley.** Goya may also have non-time barred causes of action still active relating to the original Goya–Tetley contractual relationship predating the assignment of the contract by Tetley to Rowland.

In any event, the question of whether Tetley engaged in conduct "detrimental" to its distribution relationship with Goya by selling the product at issue to Rowland, **would inherently constitute facts not currently pleaded in the complaint.** The problem is that the skimpy allegations as to Tetley only allow the Court to make "unsupportable conclusions" or "periphrastic circumlocutions," which are banned under Rule 12(b)(6). *See Aulson*, 83 F.3d at 3. And this Court certainly cannot read into allegations nonexistent facts. Therefore, under Rule 12(b)(6), dismissal of Tetley is appropriate.

## VII

### CONCLUSION

At this motion-to-dismiss stage the Court is required to look only to the complaint and make a simple determination as to whether such a claim is hypothetically plausible under Law 75. In making such a determination, the Court has an obligation of accepting as true the facts alleged in the complaint and of construing these facts "in the light most flattering to the plaintiff['s] cause." *Aldahonda–Rivera v. Parke Davis & Co.,* 882 F.2d 590, 594 (1st Cir. 1989). Tetley's motion to dismiss should be granted only if, from the facts alleged in the complaint, it appears to a legal certainty that Goya will be absolutely incapable of recovering from Tetley. But the Court today has reached the conclusion that, *prima facie,* no liability may be imposed on Tetley, the assignor. Thus, pursuant to Rule 12(b)(6), Tetley's motion to dismiss must be **granted.**[15]

In sum, because Rowland acquired "Café Bustelo" and assumed the obligations that, as principal, pre-existed between Goya and **Tetley,** Goya is, *prima*

---

**15.** As stated above, the Court deems that Goya, may be, hypothetically speaking, capable of alleging with specificity and bringing forth factual allegations showing that Tetley's action in selling "Café Bustelo" was in, in reality, an **indirect** way of reaping the good will Goya had established locally. Law 75 not only prohibits acts of direct impairment, but also **indirect** impairment. 10 P.R. LAWS. ANN., § 278a. Therefore, should Goya state clear facts pointing to Tetley's "indirect" liability or non-time barred causes of action occurring during the Goya–Tetley contract, pursuant to Law 75, the Court will entertain and consider said allegations. Accordingly, the Court grants Goya **twenty (20) days** to amend its complaint to those effects. **But no extensions shall be granted.**

*facie,* precluded from imposing any liability on Tetley. With the assumption of rights to Café Bustelo by Rowland, and Goya's acceptance thereafter, Tetley was liberated. Therefore, the Court today finds that, pursuant to FED.R.CIV.P. 12(b)(6), Goya has failed to properly plead sufficient facts to establish a claim upon which relief can be granted against Tetley.

**WHEREFORE,** under Rule 12(b)(6), Tetley's motion to dismiss is **GRANTED.** (Docket No. 10).[16]

**IT IS SO ORDERED.**

---

**16.** Regardless of the fact that the Court is dismissing Tetley from this case at this stage, and in spite of the possibility that Goya may amend the complaint in an effort to claim factual allegations against Tetley, bringing Tetley back into this case, the Court will notwithstanding refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly.");

*Zayas–Green v. Casaine,* 906 F.2d 18, 21 (1st Cir.1990) ("This final judgment rule ... furthers 'the strong congressional policy against piecemeal review.' " *Id.* (*quoting In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980)); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183 (1st Cir.1989); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir.1988); *Spiegel v. Trustees of Tufts Coll.,* 843 F.2d 38, 43 (1st Cir.1988); *Santa Maria v. Owens–Ill., Inc.,* 808 F.2d 848, 854 (1st Cir.1986)); *see also United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).