**Not For Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-1075

UNILEVER HOME & PERSONAL CARE USA,
Plaintiff, Appellee,

v.

PUERTO RICO BEAUTY SUPPLY, INC.,
Defendant-Counterclaimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lipez, Circuit Judge,

John R. Gibson, Senior Circuit Judge,*

and Howard, Circuit Judge.

Luis E. Padron-Rosado, with whom Consuelo M. Sifre Garcia,
Sánchez Betances, Sifre, and Muñoz Noya & Rivera, PSC, were on
brief, for appellant.
Ana M. Nin-Torregrosa, with whom Nin-Torregrosa Law Office,
Armando Llorens, Samuel T. Céspedes and McConnell Valdés, were on
brief, for appellee.

January 20, 2006

---

*Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

**Per Curiam**.  Puerto Rico Law 75 prohibits a principal from terminating a distribution contract with its dealer without just cause.  10 L.P.R.A. § 278.  Law 75 was enacted on June 24, 1964, and does not apply retroactively to distribution agreements reached before the law's enactment.  See Warner Lambert v. Superior Court, 101 D.P.R. 378 (1973).  In this case, Unilever Home & Personal Care USA (Unilever), the manufacturer of Helene Curtis beauty products, sought a declaratory judgment that its relationship with a former distributor, Puerto Rico Beauty Supply Company (PRBS), was not governed by Law 75 because their distribution relationship commenced before June 24, 1964.  The parties cross-moved for summary judgment, and the district court entered judgment for Unilever.  We vacate the judgment and remand for further proceedings.

Resolution of this appeal requires an understanding of the relationships among three entities:  Helene Curtis Industries (Helene Curtis) (which Unilever acquired in 1996), Llorens Caribbean Distribution Company (Llorens Caribbean), and PRBS.  As this case is before us after the grant of summary judgment in favor of Unilever, we present the facts in the light most favorable to PRBS.[1]  See Sargent v. Tenaska, Inc., 108 F.3d 5, 6 (1st Cir. 1997).

---

[1]PRBS has not appealed the denial of its cross-motion for summary judgment.

In 1958, Llorens Caribbean, owned by two brothers, Humberto and Edgar Llorens, became the Puerto Rico distributor of Helene Curtis's professional and retail lines of beauty products.[2] In 1961, the Llorens brothers incorporated PRBS. PRBS operated as a store in Hato Rey, Puerto Rico, selling to salons and beauticians various cosmetic lines, including the Helene Curtis professional line.

Although the Llorens brothers owned both Llorens Caribbean and PRBS from 1961 until 1971, the companies maintained separate employees, records, books, and accounts. One of PRBS's employees was Gloria Soegaard de Martin. In 1969, the Llorens brothers hired Soegaard's husband, Carlos Martin, as the accountant for both companies.

In 1971, the Llorens brothers decided to sell PRBS to the Martins to generate additional capital for Llorens Caribbean, which was financially distressed. To effectuate the sale, the Llorens brothers transferred ownership of all PRBS stock from themselves to Llorens Caribbean, thus making PRBS a wholly-owned subsidiary of Llorens Caribbean. The Martins then purchased PRBS's stock from Llorens Caribbean.

After the sale, PRBS continued to operate as before. It ordered its Helene Curtis professional products from Llorens

---

[2]In 1958, Llorens Caribbean was known as Curtis Laboratories. It changed its name in 1969.

Caribbean and resold them from its store. Martin continued to work for Llorens Caribbean as its accountant until March 1972, when he resigned. Shortly thereafter, Llorens Caribbean filed for bankruptcy.

Sometime near the end of 1973, Martin learned from Edgar Llorens that Llorens Caribbean was planning to close because of financial difficulties. This prompted Martin to contact Helene Curtis about the possibility of becoming its Puerto Rico distributor. Martin learned that, if this was to happen, Helene Curtis could not designate PRBS as its Puerto Rico distributor until it terminated its relationship with Llorens Caribbean, and that PRBS would have to distribute both the professional and retail lines of products.

In the early summer of 1974, Helene Curtis informed Martin that it was terminating its relationship with Llorens Caribbean. In June 1974, Helene Curtis sent PRBS a draft agreement, which included a provision requiring PRBS to repay Llorens Caribbean's outstanding debt to Helene Curtis. PRBS signed the agreement on July 1, 1974. The only parties to the agreement were Helene Curtis and PRBS. Sometime after PRBS signed the agreement, it amended its corporate documents to state that it would engage in "retail and <u>wholesale</u> of beauty products." (Emphasis supplied.) Previously, the corporate objective was stated to be the "purchase and sale of beauty products."

-4-

The initial distribution agreement between PRBS and Helene Curtis was modified in 1977. A new contract was executed in 1982, and was later modified in 1987 and 1990. In 1996, Unilever acquired Helene Curtis and, in 1999, it presented PRBS with a new distribution agreement.

PRBS refused to sign the agreement and the parties' relationship deteriorated. On February 6, 2002, Unilever terminated PRBS as a distributor. In its termination letter, Unilever offered three reasons: (1) PRBS failed to provide proper service to national accounts such as Wal-Mart; (2) PRBS failed to work diligently to insure that Helene Curtis products destined for Puerto Rico were not diverted to the United States mainland; and (3) PRBS had failed to modernize its operations to provide adequate marketing services.

Shortly after the termination, Unilever sought a declaratory judgment that the parties' relationship was not governed by Law 75 or, if Law 75 did apply, the relationship had been terminated for "just cause." At the conclusion of discovery, Unilever moved for summary judgment on three grounds: (1) PRBS had been a distributor of Helene Curtis products since its founding in 1961; (2) PRBS was assigned Llorens Caribbean's distributorship in 1974 and was therefore a successor-in-interest to Llorens Caribbean's relationship with Helene Curtis (which predated Law 75's June 24, 1964 enactment date); and (3) Unilever terminated its

relationship with PRBS for just cause.

The district court granted Unilever's motion on a ground not argued by Unilever. It concluded that Llorens Caribbean was a distributor of Helene Curtis products prior to the enactment of Law 75 and that PRBS was a wholly-owned subsidiary of Llorens Caribbean when Llorens Caribbean sold PRBS to the Martins. Based on these facts, the court ruled that, by operation of law, Llorens Caribbean's distribution relationship with Helene Curtis was transferred to the Martins as part of the Martins' purchase of PRBS in 1971. And, since this transferred relationship began before Law 75's enactment, Law 75 did not apply to the parties' relationship.

We review the district court's summary judgment ruling de novo. See Guzman-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 9 (1st Cir. 2005). Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (c).

The parties agree that Law 75 does not apply if the distributorship relationship between PRBS and Helene Curtis began before Law 75's enactment in June 1964. As just explained above, the district court concluded that the relationship began before June 1964 because of PRBS's status as a wholly-owned subsidiary of Llorens Caribbean when PRBS was sold to the Martins in 1971.

The district court incorrectly concluded that PRBS was or became a party to Llorens Caribbean's distributor relationship with

Helene Curtis merely because it was Llorens Caribbean's subsidiary in 1971. "The properties of two corporations are distinct though the same shareholders own or control both," 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 31 (rev. ed. 1999). Moreover, a subsidiary does not own the property of its parent company simply by virtue of its subsidiary status, see Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003).[3] Therefore, the district court's ruling is only sustainable if PRBS was in fact a distributor of Helene Curtis products prior to the enactment of Law 75.

The record is not sufficiently undisputed to require such a conclusion. The former president of Helene Curtis, Ronald Gidwitz, testified that Llorens Caribbean was the sole owner of the contract to distribute Helene Curtis products in Puerto Rico until Helene Curtis terminated its relationship with Llorens Caribbean in 1974. Similarly, Edgar Llorens testified that PRBS "did not have a relationship with Helene Curtis" while PRBS was owned by the Llorens brothers and that "all purchases of Helene Curtis professional products made by PRBS prior to the termination of the contract between Llorens Caribbean Distributing Corporation and Helene Curtis were done through Llorens Caribbean Distributing Corporation, as the exclusive distributor of [Helene Curtis]

_____

[3]The parties assume for purposes of appeal that the Llorens brothers did not disregard corporate formalities to such a degree that the PRBS and Llorens Caribbean were in fact one entity.

-7-

products."  Moreover, Carlos Martin testified that Llorens Caribbean was the exclusive distributor of Helene Curtis products until July 1974 and that, after he bought PRBS in 1971, the company continued to purchase all of its Helene Curtis products from Llorens Caribbean.  Finally, PRBS did not change its corporate objective to the "wholesale" sale of beauty products until after it signed the 1974 distributorship agreement.  This evidence establishes, at the least, a material issue of fact as to whether PRBS had a distributor relationship with Helene Curtis prior to the enactment of Law 75.[4]

Arguing in the alternative, Unilever contends that the undisputed facts demonstrate that Llorens Caribbean assigned its distributorship contract to PRBS in 1974.  Since Llorens Caribbean's distributor relationship with Helene Curtis began before Law 75's enactment, Unilever argues that Law 75 does not apply.

We may, of course, affirm on this ground even though it was not the basis for the district court's ruling.  See Fabiano v. Hopkins, 352 F.3d 447, 451 (1st Cir. 2003).  PRBS does not dispute that the relationship between Llorens Caribbean and Helene Curtis predated the enactment of Law 75 and agrees that Law 75 would not

---

[4]To defend the summary judgment ruling, Unilever cites cases holding that an entity may simultaneously act as a retail store and distributor.  See, e.g., J. Soler Motors, Inc. v. Kaiser Jeep Int'l, 108 P.R. Dec. 134, 139 (1979).  While this may be so, a factfinder could conclude that PRBS was only a retail store and not a distributor of Helene Curtis products prior to Law 75's enactment.

apply if PRBS succeeded to Llorens Caribbean's distributorship agreement with Helene Curtis. It contends, however, that the facts are disputed as to whether it assumed Llorens Caribbean's contract or formed an independent distributor relationship with Helene Curtis by signing the July 1974 agreement. We agree.

Under Puerto Rico law, the assignment of a contract is "the transfer by one of the contracting parties to a third party, of the exact and integral position occupied by the former in the assigned contract." Goya de P.R. v. Rowland Coffee Roasters, Inc., 206 F. Supp. 2d 211, 218 (D.P.R. 2002) (internal citation omitted). For an effective assignment to occur, "the three interested parties must concur in the act of the assignment: the party that transfers its position in the contract (the assignor), the assignee party that will acquire it and the obligor that will be affected by the change of the person with whom he had contracted." Id.

The record is in dispute concerning whether Llorens Caribbean, PRBS, and Helene Curtis agreed that Llorens Caribbean's distributorship contract would be assigned to PRBS. Martin testified that he learned, at the end of 1973, that Llorens Caribbean was going to close because of financial troubles. At that point, he contacted Helene Curtis about PRBS becoming its Puerto Rico distributor. After approaching Helene Curtis, Martin was told that Helene Curtis could not appoint PRBS as the distributor until it had concluded its relationship with Llorens Caribbean. After

-9-

that, Martin took no further action until Helene Curtis sent him a distributorship agreement. These proffered facts do not compel a conclusion that Martin agreed with Llorens Caribbean to assume its contractual relationship before signing the distributorship agreement.

Moreover, Edgar Llorens testified that Llorens Caribbean never agreed to transfer its distributorship rights to "anyone." This testimony, in turn, was consistent with Gidwitz's testimony that Helene Curtis understood that Llorens Caribbean was its sole distributor. The record thus contains evidence from which a factfinder could conclude that neither PRBS (the potential assignee) nor Llorens Caribbean (the potential assignor) agreed to an assignment of Llorens Caribbean's rights to distribute Helene Curtis products.

Unilever argues that PRBS's promise that it would pay Llorens Caribbean's outstanding debt to Helene Curtis is conclusive proof of such an assignment. We disagree. At most, this suggests a connection between Llorens Caribbean's relationship with Helene Curtis and PRBS's subsequent agreement with Helene Curtis. On the other hand, it could be that Helen Curtis demanded this concession from PRBS as a condition of the new distributorship relationship. The factfinder must sort this out.

Finally, Unilever contends that, even if Law 75 applies to the parties' relationship, summary judgment was appropriately

granted because the undisputed facts indicate that Unilever terminated its relationship with PRBS for just cause.  Law 75 defines "just cause" as "nonperformance of the essential obligations of the [distributor] . . . that adversely and substantially affects the interest of the [manufacturer] in promoting the marketing or distribution of the merchandise or service."  10 L.P.R.A. § 278(d). As mentioned, Unilever offered three reasons for terminating its relationship with PRBS.  But, as to each, there are disputed issues of fact.

Unilever claimed that PRBS failed to properly service the Wal-Mart account. But representatives from Wal-Mart testified that they were satisfied with PRBS's service.  Victor Schiavo, a Wal-Mart senior buyer who worked directly with PRBS for five years, testified that PRBS's service of Wal-Mart's account was "excellent" and that he knew of no complaints about PRBS's performance. Moreover, Milagros Ester Meléndez-Rodríguez, another Wal-Mart buyer, testified that PRBS was "one of the best" distributors that Wal-Mart had.

Unilever also contended that PRBS was intentionally diverting Helene Curtis product to the mainland.  However, there was evidence challenging this assertion. Ronald Gidwitz testified that there had been investigations into allegations that PRBS was involved in the diversion of Helene Curtis products but that these allegations had never been substantiated.  Moreover, Norma

-11-

Santamaría, Helene Curtis's director of Latin America and Eastern European sales until February 1999, testified that Martin acted aggressively on behalf of PRBS to address complaints concerning the diversion of products.

Unilever further accused PRBS of failing to provide adequate service to the Puerto Rico market, but Gidwitz and Santamaría provided contrary testimony. Santamaría stated that PRBS was "one of the best [distributors] in Latin America," that "its salesmen were well prepared," and that there was a positive response from PRBS's customers to its efforts. Gidwitz similarly testified that PRBS "was doing quite a good job" in distributing Helene Curtis products in Puerto Rico.

In sum, whether PRBS was distributing Helene Curtis products before the enactment of Law 75, whether Llorens Caribbean assigned its distribution agreement to PRBS in 1974, and whether Unilever terminated its relationship with PRBS for just cause cannot be resolved on summary judgment, but will instead require resolution of contested factual issues.

**Vacated and remanded**. Costs are awarded to Puerto Rico Beauty Supply, Inc.